**UNITED STATES of America,**

v.

**Michael L. CARUCCI, Defendant.**

**No. CRIM.97–10060–REK.**

United States District Court,
D. Massachusetts.

Aug. 15, 2002.

STIARNA for the trip to Grenada.

---

**14.** The Hanovers incurred expenses, over and above the purchase price, in preparing the

Kenneth J. Fishman, Fishman, Ankner & Horstman, LLP, Boston, MA, for Stephen J. Flemmi, defendant.

Martin G. Weinberg, Oteri, Weinberg & Lawson, Boston, MA, for Michael L. Carucci, defendant.

John T. Burns, Boston, MA, for Stephen J. Hussey, interested party.

Jonathan M. Albano, Thomas J. Hennessey, Anthony E. Fuller, Bingham, McCutcheon, L.L.P., Boston, MA, for Richard Lehr, interested party.

Sean M. Beagan, Gargano and Associates, Thomas Graves Landing, Cambridge, MA, for Paul A. Gargano, interested party.

Edward T. Hinchey, Sloane & Walsh, Boston, MA, for Estate of Michael J. Donahue, interested party.

Richard L. Hoffman, United States Attorney's Office, Boston, MA, for U.S. Attorneys.

Memorandum and Order

KEETON, District Judge.

## I. The Pending Post–Verdict Motion for Judgment of Acquittal

Pending for decision is Defendant's Post–Verdict Motion for Judgment of Acquittal (Docket No. 261, filed April 22, 2002).

Also before the court are the following associated filings:

(1) United States' Opposition to Defendant's Post–Verdict Motion for Judgment of Acquittal (Docket No. 273, filed May 6, 2002);

(2) Defendant's Response to United States' Opposition to Defendant's Post–Verdict Motion for Judgment of Acquittal (Docket No. 278, filed May 17, 2002);

(3) Copies of Relevant Pages of Trial Transcript filed by Defendant (Docket No. 287, filed May 30, 2002);

(4) United States' Supplemental Response to Defendant's May 30 Filing (Docket No. 288, filed May 31, 2002); and

(5) Reply by Defendant to Government's Supplemental Response (Docket No. 289, filed June 3, 2002).

## II. Procedural History of This Case

### A. The Indictment

On March 11, 1997, a Grand Jury of the United States District Court for the District of Massachusetts returned a 103–Count Indictment against Stephen J. Flemmi and Michael L. Carucci. It charged only Flemmi in Counts 67–69. It charged against both,

in Count 1, a Money Laundering Conspiracy under 18 U.S.C. § 1956(h);

in Counts 2–66, substantive money-laundering offenses under 18 U.S.C. § 1956;

in Counts 70–102, transactions in criminally derived property under 18 U.S.C. § 1957; and

in Count 103, a RICO Conspiracy under 18 U.S.C. § 1962(d).

(Docket No. 1, filed March 11, 1997).

Concluding the indictment were Money Laundering Forfeiture Allegations and Racketeering Forfeiture Allegations, the practical effect of which was to deprive both defendants of access to their respective interests in numerous real estate parcels and bank accounts, regardless of whether or not the government would be able to prove its charges at trial.

The indictment also alleged that Stephen J. Flemmi had been involved "continuously since the 1960s ... in organized crime within the District of Massachusetts and elsewhere" and during the 1970s "acted in a supervisory position in a criminal organization known by various names, including 'The Winter Hill Gang' and 'South Boston.'" The opening paragraph of the "INTRODUCTION" of the indictment added, as part of paragraph (a):

In or about 1979, the defendant STEPHEN J. FLEMMI and James J. Bulger became the leaders of the Winter Hill Gang. The defendant STEPHEN J. FLEMMI has remained a leader of the Winter Hill Gang up to the date of this indictment.

*Id.*

After allegations in part (b) about income from unlawful activity as sources of Flemmi's income and allegations in part (c) about MLC Properties Inc., d/b/a Group Boston Real Estate (also called Group Boston), as a Massachusetts Corporation engaged in the business of brokering, managing, developing, and investing in real estate properties, characterizing it as a

"financial institution" as that phrase is used in 18 U.S.C. § 1956(c)(6) and 31 U.S.C. § 5312(a)(2), the INTRODUCTION continued:

> (d) The defendant MICHAEL L. CA-RUCCI is the President, Clerk, Treasurer and Director of Group Boston and owns 100% of the outstanding shares of stock in Group Boston. The defendant MICHAEL L. CARUCCI is a person involved in real estate closings and settlements, and is engaged in, and has activities which affect, interstate and foreign commerce.
>
> (e) Between approximately 1991 and the present, the defendant MICHAEL L. CARUCCI has participated in multiple business and real estate ventures with the defendant STEPHEN J. FLEMMI, as the defendant FLEMMI's partner and otherwise.

*Id.*

## B. Availability of Prompt Trial

The judge to whom this case was randomly drawn under the court's assignment system was available to try the charges in this case against both defendants together, or against them separately in sequence, as appropriate, during the period provided by law for speedy trial in the absence of excludable time apart from that incident to severance, if severance had been determined to be appropriate. It was approximately five years before any part of the case came to trial. Trial commenced with jury selection on March 11, 12, and 14, 2002, on 100 of 103 Counts, and against defendant Carucci only. The court at all times after indictment in 1997 had been prepared to try the case promptly upon its being ready for trial. For a period of a few months the originally assigned judge would have been unavailable because of major surgery, and the case would then have been tried before another judge of the court. But the originally assigned judge was again available before any part of the case was ready for trial.

## C. The Pattern of Delay

On the full record that is now before me in this case, I find that the United States Attorney for the District of Massachusetts and the Assistant United States Attorneys to whom he assigned responsibility for prosecution of this case chose not to seek a prompt trial. Either according to an initial plan or by a series of decisions as circumstances associated with the case developed, they preferred to delay trial for approximately five years. Each of the defendants also had his own distinctive reasons for preferring delay over prompt trial. Thus, all parties requested extensions of time on grounds the court found acceptable and consistent with excludable-time provisions of rules regarding speedy trial rights of the public and the parties.

## D. Status of the Case at Time of Impanelment

When the government eventually declared it was ready to proceed with trial, it was barred from proceeding with the trial against defendant Stephen J. Flemmi under a plea agreement in *United States v. Stephen J. Flemmi,* Criminal Number 94–10287–MLW, a case in which the indictment also included allegations of money laundering and conspiracy to commit money laundering. (*See* United States' Motion to Dismiss Indictment with Respect to Defendant Stephen J. Flemmi, Docket No. 186, filed March 18, 2002; the court allowed that motion by an endorsement on its margin on March 19, 2002).

Before the trial commenced, the court concluded also that discovery requests and motions to dismiss all or at least some counts of the indictment against the defendant Michael L. Carucci, ultimately determined to be meritorious at least in part,

had to be heard and decided before the court could properly submit the case to the jury that was impaneled on March 11, 12, and 14, 2002.

The court denied the requests that the court hold an evidentiary hearing and make its decision on whether it would submit the conspiracy charges against Michael L. Carucci before impaneling a jury. The court gave notice that instead it would follow the practice of making its final decision on that matter after the close of all the evidence, as approved and directed by the Court of Appeals for the First Circuit in, among other cases, *United States v. Ciampaglia*, 628 F.2d 632, 638 (1st Cir. 1980), and *United States v. Bradshaw*, 281 F.3d 278, 284 (1st Cir.2002).

Because the government still had not disclosed admissible evidence sufficient for the case to go to the jury against defendant Michael L. Carucci on either of the two conspiracy Counts, the court warned government counsel that it would allow a mistrial if requested by defendant Carucci on adequately supported grounds that the government had withheld evidence that it should have disclosed in advance of trial and in fact disclosed only during trial, and that if the government did not produce during trial admissible evidence sufficient to close the gaps in the governments's advance proffer of evidence to show that Carucci had knowingly become a member of a conspiracy charged against him, the court expected to direct acquittal at least on the conspiracy counts and possibly on substantive counts on which the court had declined to direct acquittal before impanelment but with notice that it would consider on the merits, count by count, after the close of evidence and before submission to the jury, the defense motion for acquittal because of the government's failure to persuade the court that it had a valid legal theory, supported by adequate evidence

for submission of each particular count to the jury.

### E. Order of Acquittal on Specified Counts Before Submission of Other Counts to the Jury

Near the conclusion of the Rule 29 Hearing, on April 4, 2002, the court stated and explained its order of acquittal on Counts 1, 14–66, 76–103. (Transcript of Rule 29 Hearing of April 4, 2002, Docket No. 263, at pp. 30–33). As noted before, Carucci was not charged in Counts 67–69.

Thus, the counts remaining to be submitted to the jury were Counts 2–13 and 70–75. *See id.* at p. 33.

### F. Verdict

In the Verdict received on April 16, 2002, the jury found the defendant:

- NOT GUILTY on Counts 2–13, and
- GUILTY on Counts 70–75.

(Verdict, Docket No. 258).

### III. Applicable Law

### A. Reservations Stated by the Court in the Charge Conference

In the Charge Conference of April 5, 2002, very helpful suggestions of counsel for the government and the defendant clarified issues that had been troubling in earlier hearings. With the benefit of these suggestions, the court was then and still is now satisfied that the charge given to the jury correctly states the law on nearly all of the issues addressed.

On a few of the objections then made and later stated by defense counsel, after the charge was given to the jury and before they commenced deliberations, I expressed my concern and gave notice of my willingness to reconsider afresh in post-verdict proceedings any matters essential to deciding what rulings I should make on post-verdict motions. These matters are

identified in the Transcript of the Charge Conference (Docket No. 264).

(1) One issue of ongoing concern was whether the government had advanced or could advance any valid legal theory of conspiracy together with a proffer of admissible evidence sufficient to support a finding of a conspiracy that defendant Carucci had manifested agreement to becoming a member of the conspiracy. *See* defense counsel's argument, *id.* at 3–6, and my response, *id.* at 6–7.

(2) Another issue concerned whether the government had advanced or could advance, for each substantive count, any viable legal theory together with a proffer of admissible evidence sufficient to support a jury finding of each of the elements of the substantive offense identified by that legal theory beyond reasonable doubt.

Among the subsidiary issues bearing on particular counts were issues concerning whether the government had proffered or ever could proffer admissible evidence sufficient to support a finding that profits from any of the alleged unlawful activities ended up in bank accounts upon which checks to American Equipment, produced by Flemmi individually or through the Mary Irene Trust, were drawn. *Id.* at 24.

Another subsidiary issue concerned whether Flemmi's daughter, Jeannette Benedetti, or others in the family, gave to RECOLL Management funds derived from identifiable unlawful activities for the purchase of a condominium from or through RECOLL Management. *See* defense counsel's argument, *id.* at 3–6, and my response, *id.* at 6–7.

Another subsidiary issue concerned causal connection. Defendant agreed that the government was not required under 18 U.S.C. § 1956 to trace proceeds of a particular sale (or other transaction) to a particular specified unlawful activity, *id.* at 24, but argued that the government had to show some causal connection between an identifiable unlawful activity and bank funds used in the transaction charged in a particular count, *id.* at 3, 24.

(3) Another set of issues concerned the instructions on willful blindness. *See id.* at 20–24.

(4) Another set of issues concerned the defense contention of government misconduct by concealment, *id.* at 31, and the defense contention that one or more counts should be dismissed by application of a legal test for dismissal of charges in an indictment under a "factors" analysis, *id.* at 32–33.

(5) Another set of issues concerned the use and meaning in various contexts of the word "willfully," *id.*, at 34–36, 39.

(6) Another set of issues concerned the defense contention that the government had proffered no admissible evidence, direct or circumstantial, that Flemmi collected extortionate extensions of credit, *id.* at 49–52.

## B. Applicable Law as Stated in the Charge to the Jury

Excerpts from the Charge to the Jury that are potentially relevant to issues remaining for decision on post-verdict motions are recited here:

> The charges submitted to you are in Counts 2–13 and 70–75 of the indictment.
>
> .     .     .     .     .
>
> Counts 70–75 charge that the defendant Michael Carucci, along with Stephen Flemmi, knowingly violated the statute prohibiting monetary transactions in criminally derived property, with a value of over $10,000, in violation of Title 18, United States Code, Section 1957.
>
> The defendant contends that he did not know that any of the funds involved in the purchase of the commercial condominium at 362 Commonwealth Avenue,

the equipment from Commonwealth Laundry, or the services from Mr. Heat derived from any unlawful activity by Stephen· Flemmi. He instead believed that the funds used by Flemmi or his family were legitimate funds derived from bank accounts. Even if you believe that Mr. Carucci was aware that Flemmi's reputation was not favorable, absent proof beyond a reasonable doubt that he knew that the funds for the specific transactions that are the subject of Counts 2–13 and 70–75 derived from Flemmi's unlawful activity then Mr. Carucci is entitled to an acquittal on all counts.

.    .    .    .    .

Counts 70–75 of the indictment contain allegations of acts by defendant Michael Carucci and others that constitute transactions in criminally derived property in violation of Title 18, United States Code, Section 1957.

Title 18, Section 1957(a) of the United States Code provides, in pertinent part, that:

> Whoever ... knowingly engages or attempts to engage in a monetary transaction in criminally derived property that is of a value greater than $10,000 and is derived from specified unlawful activity ... shall be guilty of an offense against the United States.

In order to prove a violation of Title 18, United States Code, Section 1957, the government must prove the following three elements beyond a reasonable doubt:

*First Element.* The defendant engaged or attempted to engage in a monetary transaction with a value of more than $10,000.

*Second Element.* The defendant knew that the property involved in the transaction had been derived from some form of criminal activity.

*Third Element.* The property involved in the transaction was actually derived from specified unlawful activity.

*First Eement.* To satisfy the first element, the government must prove that the defendant knowingly engaged in, or attempted to engage in, a monetary transaction involving property of a value greater than $10,000.

A monetary transaction is the deposit, withdrawal, transfer, or exchange, in or affecting interstate commerce, of funds or a monetary instrument by, through, or to a financial institution. I have previously defined for you the terms "monetary instrument" and "financial institution."

Thus, the transaction must involve three things:

First, it must be in, or have some minimal relationship to, interstate commerce.

Second, it must be by, through, or to a financial institution. For example, drawing a check on a bank account would satisfy this requirement.

Third, the property involved must have a value greater than $10,000.

*Second Element.* To prove the second element, the government must show that the defendant knew that the money involved in the transaction was criminally derived property.

Criminally derived property includes any property constituting or derived from proceeds of criminal activity. This means that the property must have been obtained from some previous, separate criminal action.

The government is only required to show that the defendant knew that the property was derived from *some* form of criminal activity. It does not have to prove that the defendant knew what particular type of criminal act produced the property.

In order to prove the element of knowledge, the government must show that the defendant actually knew that the property was derived from criminal activity. It is not sufficient for the government to show that the defendant might have known or should have known.

In determining whether the defendant knew that the property was derived from criminal activity, the jury must make a decision about the defendant's state of mind at the time of the transaction. It is impossible to prove this directly, because the jury cannot look into the defendant's mind. Therefore, you may rely on circumstantial evidence in making this determination. You should consider all the facts and circumstances shown in the evidence in order to infer with a reasonable degree of accuracy what the defendant's state of mind was. In deciding whether the defendant acted knowingly, you may infer that the defendant had knowledge that the property involved in the transaction was derived from criminal activity if you find that he deliberately closed his eyes to the fact that otherwise would have been obvious to him. It is for the jury to decide whether the defendant was willfully blind to the fact that the property was criminally derived and, if so, what inference should be drawn. It is important, however, to bear in mind that mere negligence or mistake in failing to learn that the property was derived from criminal activity is not sufficient.

The government is not required to prove that the defendant knew that the transaction involving criminally derived property was itself an illegal act. In other words, although the defendant must know that the property was derived from criminal acts, the law does not require that he be aware that the transaction involving that property was a separate illegal act.

*Third Element.* To prove the third element of the offense, the government must show that the property involved in the transaction was actually derived from specified criminal activity.

"Specified criminal activity" refers to crimes included in a list of offenses included in the statute.

I have already instructed you on the specified unlawful activity alleged in the indictment.

It is for the jury to decide whether the government has proved beyond a reasonable doubt that the property involved in the transaction was actually derived from the criminal activities just mentioned.

In proving the third element, it is not necessary for the government to show that *all* of the property involved in the transaction was derived from the criminal activity. The government can meet its burden of proof even if some of the involved property was derived from lawful sources and was commingled with the criminally derived property in the transaction, so long as the government proves beyond reasonable doubt that at least $10,000 of each monetary transaction was derived from specified unlawful activity.

In determining whether the property involved in a transaction was derived from specified criminal activity, you may consider circumstantial evidence insofar as it would support common sense inferences based on the realities of human experience.

As already mentioned, the government must prove beyond a reasonable doubt that the defendant knew that the property involved in the transaction was derived from criminal activity.

The government, however, does not need to show that the defendant knew that the property was derived from any

of the offenses that qualify as "specified" criminal activity. All that is required is knowledge that the property was produced by some form of unlawful action. I am sending a copy of the relevant portion of the indictment into the jury room for you to have during your deliberations. You may use it to read the crimes which the defendant is charged with committing. You are reminded, however, that an indictment is merely an accusation and is not to be used by you as any proof of the conduct charged. (Charge to the Jury, Docket No. 305 at 17, 45–49).

## IV. Count 70

Under applicable law, on Count 70 the government's burden was to prove beyond reasonable doubt each of the following three elements:

*First Element.* The defendant engaged or attempted to engage in a monetary transaction with a value of more than $10,000.

*Second Element.* The defendant knew that the property involved in the transaction had been derived from some form of criminal activity.

*Third Element.* The property involved in the transaction was actually derived from specified unlawful activity. Charge to the Jury, Part III above, at page 10. *See also, e.g.,* 18 U.S.C. § 1957; *United States v. Sokolow,* 91 F.3d 396, 408 (3d Cir.1996); *United States v. Gabriele,* 63 F.3d 61, 65 (1st Cir.1995).

■ The transaction identified in Count 70 of the Indictment was the June 4, 1993 transfer, in the amount of $35,883, of Bank of Braintree check # 108 (account # 146400161), payable to the order of American Equipment Corp. for the purchase of laundromat equipment by Commonwealth Laundries & Cleaners, Inc.

I conclude that under applicable law the defense stated a valid objection to the submission of this count to the jury. The Bank of Braintree check was payable to a corporate entity (American Equipment Corp.) engaged regularly in receiving payments of amounts of $35,000 or more for equipment, installation, and maintenance for use in laundromats like the one operated as Commonwealth Laundries & Cleaners, Inc., and American Equipment in fact treated it as a routine and acceptable method of payment for its furnishing and installing for this laundromat a type of upgrading equipment ordinarily required for equipment of the age of the equipment found there by American Equipment's representatives. The government's evidence received at the trial was insufficient as a matter of law to support a jury finding against defendant Carucci on the Second Element (that Carucci knew that the property involved in the transaction had been derived from some form of criminal activity). *See United States v. Tramunti,* 500 F.2d 1334 (2d Cir.1974) (Federal Rule of Criminal Procedure 29 permits judgment of acquittal based on insufficiency of evidence).

This outcome is the only correct outcome if the "property involved" is held to be the "money" in the Bank of Braintree account and also if the "property involved" is held to be either the equipment that was upgraded or the equipment that American Equipment supplied to effect the upgrade. Thus, this court erred as a matter of law in submitting Count 70 to the jury, and the jury verdict cannot have the effect of curing the court's error of law.

I take into account also the government's contention that evidence received regarding the 1992 transactions involved in Counts 73–75 served not only as evidence bearing on Counts 73–75 but also as circumstantial evidence bearing on the 1993 transactions involved in Counts 70–72. The weight of this evidence as it bears on

Counts 70–72, however, is very limited and is not sufficient, when added to the other evidence received in relation to Counts 70–72, to provide adequate support for a finding favorable to the government on the Second Element of the government's burden on Count 70. The banking transactions and properties involved in Counts 73–75 were exceptional rather than routine. Those exceptional qualities of the 1992 transactions have little weight as supporting an inference of knowledge or notice to defendant Carucci that anything was irregular about the 1993 transactions between Commonwealth Laundries and American Equipment, and I conclude as a matter of law that adding this limited evidence to that bearing on Count 70, considered above, as a matter of law does not overcome the government's failure to meet its burden on the Second Element of Count 70.

For these reasons, the Order below sustains the defendant's Post–Verdict Motion for Acquittal in Count 70.

### V. Count 71

Under applicable law, on Count 71 the government's burden was to prove beyond reasonable doubt each of the following three elements:

*First Element.* The defendant engaged or attempted to engage in a monetary transaction with a value of more than $10,000.

*Second Element.* The defendant knew that the property involved in the transaction had been derived from some form of criminal activity.

*Third Element.* The property involved in the transaction was actually derived from specified unlawful activity.

Charge to the Jury, Part III above, at page 10. *See also, e.g.,* 18 U.S.C. § 1957; *United States v. Sokolow,* 91 F.3d 396, 408 (3d Cir.1996); *United States v. Gabriele,* 63 F.3d 61, 65 (1st Cir.1995).

The transaction identified in Count 71 of the Indictment was the June 11, 1993 transfer, in the amount of $15,108.18, of Bank of Braintree check # 110 (account # 146400161), payable to the order of American Equipment Corp. for the purchase of laundromat equipment by Commonwealth Laundries & Cleaners, Inc.

I conclude that under applicable law the defense stated a valid objection to the submission of this count to the jury. The Bank of Braintree check was payable to a corporate entity (American Equipment Corp.) engaged regularly in receiving payments of amounts substantially larger than $15,000 for equipment, installation, and maintenance for use in laundromats like that of Commonwealth Laundries & Cleaners, Inc., and American Equipment in fact treated it as a routine and acceptable method of payment for its furnishing and installing for this laundromat a type of upgrading equipment ordinarily required for equipment of the age of the equipment found there by American Equipment's representatives. The government's evidence received at the trial was insufficient as a matter of law to support a jury finding against defendant Carucci on the Second Element (that Carucci knew that the property involved in the transaction had been derived from some form of criminal activity).

This outcome is the only correct outcome if the "property involved" is held to be the "money" in the Bank of Braintree account and also if the "property involved" is held to be either the equipment that was upgraded or the equipment that American Equipment supplied to effect the upgrade. Thus, this court erred as a matter of law in submitting Count 71 to the jury, and the jury verdict cannot have the effect of curing the court's error of law.

I take into account also the government's contention that evidence received

regarding the 1992 transactions involved in Counts 73–75 served not only as evidence bearing on Counts 73–75 but also as circumstantial evidence bearing on the 1993 transactions involved in Counts 70–72. As explained in Part IV above, however, the weight of this evidence as it bears on Counts 70–72 is very limited and is not sufficient, when added to the other evidence received in relation to Count 71, to provide adequate support for a finding favorable to the government on the Second Element of the government's burden on Count 71.

For these reasons, the Order below sustains the defendant's Post–Verdict Motion for Acquittal in Count 71.

## VI. Count 72

Under applicable law, on Count 72 the government's burden was to prove beyond reasonable doubt each of the following three elements:

*First Element.* The defendant engaged or attempted to engage in a monetary transaction with a value of more than $10,000.

*Second Element.* The defendant knew that the property involved in the transaction had been derived from some form of criminal activity.

*Third Element.* The property involved in the transaction was actually derived from specified unlawful activity.

Charge to the Jury, Part III above, at page 10. *See also, e.g.,* 18 U.S.C. § 1957; *United States v. Sokolow,* 91 F.3d 396, 408 (3d Cir.1996); *United States v. Gabriele,* 63 F.3d 61, 65 (1st Cir.1995).

The transaction identified in Count 72 of the Indictment was the June 16, 1993 transfer, in the amount of $27,461, of Bank of Braintree check #117 (account #146000648), payable to the order of American Equipment Corp. for the purchase of laundromat equipment by Commonwealth Laundries & Cleaners, Inc.

I conclude that under applicable law the defense stated a valid objection to the submission of this count to the jury. The Bank of Braintree check was payable to a corporate entity (American Equipment Corp.) engaged regularly in receiving payments of amounts larger than $27,500 for equipment, installation, and maintenance for use in laundromats like that of Commonwealth Laundries & Cleaners, Inc., and American Equipment in fact treated it as a routine and acceptable method of payment for its furnishing and installing for this laundromat a type of upgrading equipment ordinarily required for equipment of the age of the equipment found there by American Equipment's representatives. The government's evidence received at the trial was insufficient as a matter of law to support a jury finding against defendant Carucci on the Second Element (that Carucci knew that the property involved in the transaction had been derived from some form of criminal activity).

This outcome is the only correct outcome if the "property involved" is held to be the "money" in the Bank of Braintree account and also if the "property involved" is held to be either the equipment that was upgraded or the equipment that American Equipment supplied to effect the upgrade. Thus, this court erred as a matter of law in submitting Count 72 to the jury, and the jury verdict cannot have the effect of curing the court's error of law.

I take into account also the government's contention that evidence received regarding the 1992 transactions involved in Counts 73–75 served not only as evidence bearing on Counts 73–75 but also as circumstantial evidence bearing on the 1993 transactions involved in Counts 70–72. The weight of this evidence as it bears on Counts 70–72, however, is very limited and is not sufficient, when added to the other

evidence received in relation to Count 72, to provide adequate support for a finding favorable to the government on the Second Element of the government's burden on Count 72.

For these reasons, the Order below sustains the defendant's Post–Verdict Motion for Acquittal on Count 72.

## VII. Count 73

Under applicable law, on Count 73 the government's burden was to prove beyond reasonable doubt each of the following three elements:

*First Element.* The defendant engaged or attempted to engage in a monetary transaction with a value of more than $10,000.

*Second Element.* The defendant knew that the property involved in the transaction had been derived from some form of criminal activity.

*Third Element.* The property involved in the transaction was actually derived from specified unlawful activity.

Charge to the Jury, Part III above, at page 10. *See also, e.g.,* 18 U.S.C. § 1957; *United States v. Sokolow,* 91 F.3d 396, 408 (3d Cir.1996); *United States v. Gabriele,* 63 F.3d 61, 65 (1st Cir.1995).

■ The transaction identified in Count 73 of the Indictment was the December 9, 1992 transfer, in the amount of $30,500, of Mount Washington Bank check # 153453, payable to the order of Jeannette Benedetti, Trustee, Comm # 1 Realty Trust, for purchase of Unit # 1, 362 Commonwealth Avenue, Boston, Massachusetts.

I conclude that under applicable law the defense objection to the submission of this count to the jury was properly overruled. Although the amount gave no notice of potential irregularity of the transaction, the identification of the account holder only by a name not generally known to the public or to persons who were bank employees or were often engaged in real estate transactions involving units in a condominium, and identified only as trustee of a Realty Trust apparently created only for the purchase and holding of one unit in a building containing condominiums, gave indications of something out of the ordinary about this transaction.

I conclude that the admissible evidence before the jury in relation to this count was sufficient to support the verdict on Count 73.

For these reasons, the Order below denies defendant Carucci's post-verdict motion for acquittal on Count 73.

## VIII. Count 74

Under applicable law, on Count 74 the government's burden was to prove beyond reasonable doubt each of the following three elements:

*First Element.* The defendant engaged or attempted to engage in a monetary transaction with a value of more than $10,000.

*Second Element.* The defendant knew that the property involved in the transaction had been derived from some form of criminal activity.

*Third Element.* The property involved in the transaction was actually derived from specified unlawful activity.

Charge to the Jury, Part III above, at page 10. *See also, e.g.,* 18 U.S.C. § 1957; *United States v. Sokolow,* 91 F.3d 396, 408 (3d Cir.1996); *United States v. Gabriele,* 63 F.3d 61, 65 (1st Cir.1995).

■ The transaction identified in Count 74 of the Indictment was the December 9, 1992 transfer, in the amount of $16,408.37, of Winter Hill Federal Savings Bank check # 449778014, payable to the order of Summers and Summers, for purchase of Unit # 1, 362 Commonwealth Avenue, Boston, Massachusetts.

I conclude that under applicable law the defense stated a valid objection to the submission of this count to the jury. The Winter Hill Federal Savings Bank check was payable to a law firm engaged regularly in receiving payments of amounts larger than $27,500 for the purchase of real estate for residential use and for use in businesses like that of Commonwealth Laundries & Cleaners, Inc., and Summers and Summers in fact treated it as a routine and acceptable method of payment. The government's evidence received at the trial was insufficient as a matter of law to support a jury finding against defendant Carucci on the Second Element (that Carucci knew that the property involved in the transaction had been derived from some form of criminal activity).

This outcome is the only correct outcome if the "property involved" is held to be the "money" in the Winter Hill Federal Savings Bank account and also if the "property involved" is held to be either the equipment that was upgraded or the equipment that American Equipment supplied to effect the upgrade. Thus, this court erred as a matter of law in submitting Count 74 to the jury, and the jury verdict cannot have the effect of curing the court's error of law.

I take into account also the government's contention that the fact that the account was in a Winter Hill entity gave indications of something out of the ordinary about the transaction. I conclude that the fact that a federally insured banking institution was located in the same area that Flemmi and James Bulger operated a criminal enterprise and that the criminal enterprise coincidentally shared part of its name with the banking institution does not indicate that every or any check drawn on that institution is related to any criminal enterprise or is otherwise out of the ordinary.

For these reasons, the Order below sustains the defendant's Post–Verdict Motion for Acquittal on Count 74.

## IX. Count 75

Under applicable law, on Count 75 the government's burden was to prove beyond reasonable doubt each of the following three elements:

*First Element.* The defendant engaged or attempted to engage in a monetary transaction with a value of more than $10,000.

*Second Element.* The defendant knew that the property involved in the transaction had been derived from some form of criminal activity.

*Third Element.* The property involved in the transaction was actually derived from specified unlawful activity.

Charge to the Jury, Part III above, at page 10. *See also, e.g.,* 18 U.S.C. § 1957; *United States v. Sokolow,* 91 F.3d 396, 408 (3d Cir.1996); *United States v. Gabriele,* 63 F.3d 61, 65 (1st Cir.1995).

The transaction identified in Count 75 of the Indictment was the December 9, 1992 transfer, in the amount of $70,000 of Hyde Park Savings Bank check # 61–074013040, payable to the order of Jeannette Benedetti, for purchase of Unit # 1, 362 Commonwealth Avenue, Boston, Massachusetts.

I conclude that under applicable law the defense objection to the submission of this count to the jury was properly overruled. Although the amount gave no notice of potential irregularity of the transaction, the identification of the account holder only by a name not generally known to the public or to persons who were bank employees or were often engaged in real estate transactions involving units in a condominium, and that it was the same name as that involved in Count 72, gave indications of something out of the ordinary about this transaction.

I conclude that the admissible evidence before the jury in relation to this count was sufficient to support the verdict on Count 75.

For these reasons, the Order below denies defendant Carucci's post-verdict motion for acquittal on Count 75.

## X. The Defense Contention on Concealment

■ In the Charge Conference of April 5, 2002, and again in the defendant Carucci's objections to the charge after it was given and before the jury commenced deliberations, defendant Carucci objected to the submission of any count to the jury on grounds of government misconduct. *See* Part III–A, above, of this Memorandum. This defense contention is that the court should have dismissed the indictment and that, having failed to do so before verdict, the court should now dismiss all counts on which the jury returned verdicts of guilty.

I find that government misconduct did occur, in the form of unwarranted overcharging. But in view of the rulings made on other aspects of Carucci's post-verdict motions, for the reasons explained in this Memorandum, I conclude that dismissal would be an unwarranted sanction, intruding upon the public's interest in proceedings fair and appropriate for protection of the public's interest as well as the interests of the United States Attorney and his assistants in prosecution and the defense interests in fair trial. *See, e.g., United States v. Font–Ramirez*, 944 F.2d 42, 46 (1st Cir.1991) ("Even where misconduct is present, post-conviction dismissal of an indictment is a rare event . . .").

Remaining for consideration is whether the court should invoke the lesser sanction of allowing a new trial on Counts 73 and 75, which the defendant has requested under Rule 33 of the Federal Rules of Criminal Procedure. I do not consider defendant's request for a new trial on Count 74 because I allow defendant's motion for judgment of acquittal on that count.

Defendant Carucci argues that a new trial is appropriate because the government, in its summation, "improperly invited the jury to rely on acquitted conduct." (Docket No. 287). Specifically, the defendant asserts that the government's references in its summation to the 238 Marlborough Street transactions was improper.

I find that, although the government skirted close to the demarcation between propriety and impropriety, it did not cross it, at least in its summation.

Although a court may order a new trial on the basis of prosecutorial misconduct, *Luttrell v. United States*, 320 F.2d 462 (5th Cir.1963), I conclude that the misconduct in this case in the form of unwarranted overcharging does not by itself warrant a new trial on Counts 73 and 75.

## XI. Conditional Motion for New Trial

Federal Rule of Criminal Procedure 29(d) requires this court, if it allows a motion for judgment of acquittal, to "also determine whether any motion for a new trial should be granted if the judgment of acquittal is thereafter vacated or reversed, specifying the grounds for such determination." Defendant Carucci requested that the court make a conditional ruling on his motion for a new trial in Docket Number 261 at page 18.

■ Because I find, as state in Part IX above, that prosecutorial misconduct did occur, and that the weight of the evidence does not support the verdict, as I state in Parts IV, V, VI, and VIII, I conclude that if the judgment of acquittal I order below is hereafter vacated or reversed a new trial should be granted for the reasons stated in those parts. *See, e.g., United States v. Dixon*, 658 F.2d 181, 193 (3d Cir.1981) (noting that court may grant a

new trial for prosecutorial misconduct *or* insufficiency of evidence).

Although I reach this conclusion based on the combination of these two factors, I also conclude that if the judgment of acquittal I order below is hereafter vacated or reversed a new trial should be granted based solely on the fact that the verdict on Counts 70, 71, 72, and 74 is not supported by the weight of the evidence.

For these reasons, the Order below allows the defendant Carucci's conditional motion for a new trial.

## ORDER

For the foregoing reasons, it is ORDERED:

(1) Defendant's Post–Verdict Motion for Judgment of Acquittal (Docket No. 261)

(a) is SUSTAINED as to Counts 70, 71, 72, and 74; and

(b) is DENIED as to Counts 73 and 75.

(2) The defendant Carucci's motion for new trial on Counts 73 and 75 is DENIED.

(3) The defendant Carucci's conditional motion for new trial on Counts 70, 71, 72, and 74 is ALLOWED.

(4) A Case Management Conference is set for September 5, 2002, at 10:00 a.m. to consider the schedule for a sentencing hearing and final disposition on Counts 73 and 75.